**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| PALWINDER SINGH,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary, U.S. Department of Homeland Security, *et al*.,<br><br>Respondents.[1] | ) | No. 26-03466-CV-S-BP |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner has been detained by the Department of Homeland Security ("DHS") even though he (1) had been released on bond and (2) has not violated his bond conditions. Pending is his Petition for Writ of Habeas Corpus, in which he argues the Due Process Clause requires that he be released or, in the alternative, granted a bond hearing. As discussed more fully below, the Court concludes the Petition should be **GRANTED** and Petitioner should be released from custody.

## I. BACKGROUND

Petitioner alleges (and Respondents do not dispute) the following facts. Petitioner is a citizen of India who entered the United States without inspection in 2015. (Doc. 1, ¶ 19.) The Department of Homeland Security ("DHS") took him into custody in April 2015, but in June 2015 an Immigration Judge ordered that he be released on bond. (Doc. 6, p. 1.) His removal was ordered

[1] While Petitioner is being held pursuant to the authority of federal officials, he is in the physical custody of the Warden of the Greene County (Missouri) Jail. The Court substitutes Jason Johnson as the Respondent in place of his predecessor, Jim Arnott, the former Sheriff of Greene County. However, through the remainder of this Order, the term "Respondents" refers to the federal officials under whose authority Petitioner's detention has been effectuated and does not include Jason Johnson.

in 2020, but that order is not final because he is appealing his asylum application, (Doc. 1, ¶ 22), and he has remained free on bond ever since. There is no suggestion that Petitioner has committed a crime, failed to attend any hearings required of him, or has otherwise violated the conditions of bond.

In June 2026, Petitioner was stopped and taken into custody by officers with Immigration and Custom Enforcement ("ICE"). (Doc. 1, ¶ 21.) He is currently still in custody.

The Petition contains two Counts; one alleges violations of substantive due process and the other asserts violation of procedural due process. Respondents argue that Petitioner is not entitled to relief, and the Court resolves the parties' arguments, as necessary, below.

## II. DISCUSSION

While Count I describes itself as asserting a substantive due process claim and Count II describes itself as asserting a procedural due process claim, the difference between them is not so obvious. Both counts argue that the mandatory detention provisions of 8 U.S.C. § 1225, *see Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), are unconstitutional as applied to a person who (1) could have been detained but instead was released on bond, (2) has not violated the conditions of bond, and (3) has lived in the country for an extended period of time. The Court agrees.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quotation omitted). While "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *id*. at 522; *see also id*. at 526; *Banyee v. Garland*, 115 F.4th 928, 931-32 (8th Cir. 2024), the Due Process protections granted to aliens are not limited to simply requiring Respondents to follow statutes. *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *United States v. Berdugo-Urquidez*, 494 U.S. 259, 271 (1990). "Freedom from imprisonment—from government custody, detention,

or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause, *Zadvydas*, 533 U.S. at 690, and it cannot be denied to anyone—including aliens—without appropriate process.

Having determined that *some* process is due, the next task is to determine *what* process is due. This inquiry involves balancing various considerations, including: "the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). In the circumstances of this case, the risk of erroneous deprivation does not appear to be a factor; the focal point of the analysis is the balance between the liberty interest at stake for the individual and the Government's interest in denying that liberty interest.

In many circumstances related to the process afforded to aliens, Congress's assessment of the balance (as expressed through statutes) is sufficient. *See Banyee*, 115 F. 4th at 933 (citing *Demore*, 538 U.S. at 528). For instance, *Demore* addressed § 1226(c), which provides that a lawful permanent resident who becomes deportable because he committed certain types of crimes shall be detained without being considered for release on bond. The Supreme Court held "that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that [such] persons . . . be detained for the brief period necessary for their removal proceedings." *Demore*, 538 U.S. at 513. *Banyee* reiterated this point with respect to the same statute. 115 F.4th at 933. And § 1225(b)(2)(A) could be justified by a concern that aliens who are "not clearly and beyond a doubt entitled to be admitted" may not appear for subsequent hearings. This rationale would

justify automatically detaining those who (1) seek admission immediately upon arriving at the border or (2) cross the border unlawfully and without notice and are found by authorities later.

But Petitioner's circumstances are different: he was detained, and instead of detaining him the Government exercised its discretion (which continues to exist under § 1225(b)) to permit Petitioner to post a bond and remain free. The Government did not have to grant Petitioner release on bond,

> [b]ut when the Government decides to release an individual on bond, it creates an implicit promise that their liberty will be revoked only if they fail to live up to the conditions of release. . . . To revoke that promise arbitrarily—without process and with no allegation of changed circumstances or violation by Petitioner—is fundamentally unfair.

*Singh v. Mullin*, 2026 WL 1021846, at *4 (N.D. Iowa Apr. 15, 2026) (quotation omitted; cleaned up). Thus, numerous courts have held that when the Government grants bond, it cannot change its position and detain the alien—even if bond did not have to be granted in the first instance—absent a change in circumstances. *E.g.*, *Sandhu v. Mullin*, 2026 WL 1146643, at *3-4 (D. Neb. Apr. 28, 2026); *Aleski M. v. Warden, Lawrence Cnty. Jail*, 2026 WL 1133615, at *4-6 (D.S.D Apr. 27, 2026); *Abbas v. Schneider*, 2026 WL 1079292, at *7-8 (S.D. Iowa Apr. 17, 2026); *Singh*, 2026 WL 1021846, at *4. "Courts have recognized the self-evident idea that an individual who has been released from custody to live a productive life in the community obtains a protected interest in their continued liberty." *Jesus Alejandro G. A. v. Blanche*, 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (quotation omitted)).[2] This conclusion arises from the larger recognition that liberty interests are not created only by the Constitution or statutes; they can also arise from legitimate expectations or interests created by the government's policies and practices. *See*

[2] The Court has limited its citations to district courts in the Eighth Circuit. There are numerous decisions from other district courts around the country reaching the same conclusion.

*Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). And in a similar context (involving a convicted person released on parole), the Supreme Court observed:

> The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. . . . We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. . . . By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The Court therefore concludes Petitioner has a liberty interest in being free on bond.

The next question is: what is Respondents' interest in withdrawing the bond previously granted to Petitioner? As stated earlier, Respondents do not contend Petitioner violated the terms of his release, nor do they identify any change in circumstances that might justify revoking his bond. The only justification for Respondents' actions seems to be that they now believe he should not be released on bond. This change in the understanding of the interplay between § 1225 and § 1226, *see Avila*, 170 F.4th at 1140 (Erickson, J., dissenting), is not sufficient to justify withdrawing the liberty interest the Government already created by granting Petitioner bond.[3]

Finally, the Court addresses the appropriate remedy for the liberty deprivation discussed above. Petitioner has been detained even though he was released on bond; this deprivation is not remedied simply by giving him a bond hearing because he already had been released on bond. The appropriate remedy is for Petitioner to be released under the same bond conditions that existed when he was detained.

---

[3] The Court's decision is thus limited to an alien who was released on bond and has not been alleged to have violated its conditions. The Court expresses no opinion on the constitutionality of § 1225's application to other circumstances, including to aliens who are detained at the border upon their initial entry or after having been discovered in the country after unlawfully entering. The Court also expresses no opinion as to what "changed circumstances" might justify revoking Petitioner's bond because Respondents have not suggested any exist.

## III. CONCLUSION

The Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to release Petitioner forthwith. Respondents are also **ORDERED** to return any property (including documents) taken from Petitioner to him or to his attorney within seven (7) calendar days.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

**DATE**: September 22, 2026